UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

KIM YANCEY,

                       Plaintiff,                            Case No. 18CV8829

                -against-                           **COMPLAINT**

OVERTIME 1ST AVENUE CORP. d/b/a PRIME ONE 16
and HONG KAI LIN REALTY LLC,

                    Defendants.

_____

## INJUNCTIVE RELIEF SOUGHT

Plaintiff, KIM YANCEY ("Plaintiff"), by and through the undersigned counsel, hereby files this Complaint against Defendants OVERTIME 1ST AVENUE CORP. d/b/a PRIME ONE 16 and HONG KAI LIN REALTY LLC (hereinafter, collectively, "Defendants") for injunctive relief pursuant to the Americans with Disabilities Act, 42 U.S.C. §12181, et. seq. ("ADA") and the ADA's Accessibility Guidelines, 28 C.F.R. Part 36 ("ADAAG"), the New York City Human Rights Law ("NYCHRL"), and the New York State Human Rights Law ("NYSHRL") and alleges as follows:

## JURISDICTION

1.      This Court has original jurisdiction over the action pursuant to 28 U.S.C. §§1331 and 1343 for Plaintiff's claims arising under 42 U.S.C. §12181, et seq., based upon Defendants' failure to remove physical barriers to access and violations of Title III of the ADA (see also, 28 U.S.C. §§2201 and 2201).

2.      Venue is proper in this Court, pursuant to 28 U.S.C. §1391 (B) in that all events giving rise to this lawsuit occurred in New York County.

## PARTIES

3.      Plaintiff is a resident of the State of New York, County of New York, is sui juris, is disabled as defined by the ADA, is required to traverse in a wheelchair, is substantially limited in performing one or more major life activities.   Plaintiff uses a wheelchair for mobility purposes.

4.      Plaintiff's access to the business at 2257 First Avenue, New York, NY ("the Property"), and/or full and equal enjoyment of the goods, services, foods, drinks, facilities,  privileges, advantages and/or accommodations  offered therein were denied and/or limited because of her disabilities, and  will  be denied  and/or  limited  in the future  unless  and until  Defendants  are compelled to remove the physical barriers to access and correct the ADA violations which exist at the Property, including those set forth in this Complaint.

5.      On August 24, 2018, Plaintiff visited the Property with the intention of being a customer at Overtime 1st Avenue Corp., a New York Corporation, d/b/a Prime One 16 (the "Facility").  As a result of the barriers described below, she was unable to patronize the Facility and enjoy the goods and services offered to non-disabled patrons.

6.      Plaintiff, who lives near the Property, intends to visit the Facility and Property within six months, or sooner, to patronize the Facility, as soon as the Facility is accessible.

7.      In this instance, Plaintiff travelled to the Facility and Property as a customer, encountered the barriers to access at the Facility and Property detailed in this Complaint, suffered legal harm and legal injury, and will continue to suffer such harm and injury as a result of the illegal barriers to access and Defendants' ADA violations, discussed below.

8.      The Facility is the lessee, sub-lessee, owner and/or operator of the Facility situated in the Property which is the subject of this action.

9.      Defendant Hong Kai Lin Realty LLC (the "LLC") is a New York Corporation and has owned the Property since March, 2010.  The LLC allows the Facility to occupy the Property pursuant to a written agreement.

**FACTUAL ALLEGATIONS AND FIRST CAUSE OF ACTION**

10.     Plaintiff repeats and realleges all the foregoing allegations of the Complaint as if fully set forth herein.

11.     On July 26, 1990, Congress enacted the ADA.

12.     Congress found, among other things, that:

(i)      some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

(ii)     historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

(iii)    discrimination against individuals with disabilities persists in such critical areas as employment, housing public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

(iv)     individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser service, programs, activities, benefits, jobs, or other opportunities; and

(v)      the continuing existence of unfair and unnecessary discrimination and prejudice

3

denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity.

42 U.S.C. §1210l(a)(l)- (3), (5) and (9).

13.     Congress explicitly stated that the purpose of the ADA was to:

(i)     provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(ii)    provide a clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

(iv)    invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. §12101(b)(1)(2) and (4).

14.     The congressional legislation provided places of public accommodation one and a half years from the enactment of the ADA to implement the requirements imposed by the ADA. The effective date of Title III of the ADA was January 26, 1992, or January 26, 1993 if the business has 10 or fewer employees and gross receipts of $500,000 or less. 42 U.S.C. § 12181; 28 C.F.R. §36.508(a)

15.     The Facility is a public accommodation and service establishment.  The Property is a public accommodation and service establishment.

16.     Pursuant to the mandates of 42 U.S.C. §12134(a), on July 26, 1991, the Department of Justice, Office of the Attorney General, promulgated federal regulations to implement the requirements of the ADA: 28 C.F.R. Part 36.  Public accommodations were

required to conform to these regulations by January 26, 1992 (or January 26, 1993 if defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. §1 281, et seq., and 28 C.F.R. §36.508(a).

17.     The Facility must be, but is not, in compliance with the ADA and ADAAG.

18.     Plaintiff has attempted to access the Facility in her capacity as a customer of the Facility but could not fully do so due to the physical barriers to access, dangerous conditions and ADA violations that exist at the Facility.

19.      Defendants have discriminated against Plaintiff and others with disabilities, by denying access to, and full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of the Facility and by failing to remove architectural barriers, as required by 42 U.S.C. §12182(b)(2)(A)(iv), and will continue to discriminate against Plaintiff and others with disabilities unless and until Defendants are compelled to remove all physical barriers that exist at the Facility and make the Facility accessible to and usable by persons with disabilities, including Plaintiff.

20.      The 1991 ADA Standards for Accessible Design (the "1991 Standards") apply to new construction and alterations until March 14, 2012. As of March 15, 2012, compliance with the 2010 Standards ADA Standards for Accessible Design (the "2010 Standards") was required for new construction and alterations, accessibility and barrier removal. Premises altered between January 26, 1992 and March 15, 2012, must comply with either 1992 or 2010 Standards in accordance with the safe harbor provisions of the 2010 Standards.

21.      According to the records of the New York City Department of Buildings, alterations were made to the facility between 2011 and 2013, so discovery will be necessary to

determine the applicable Standard[1].

22.     In any event, in instances where the 2010 Standards do not apply, the 1991 Standards apply and all of the violations listed in paragraph 24 below have companion provisions (if not identical) in the 2010 Standards.

23.     Defendants have discriminated against Plaintiff by failing to comply with the above requirements.  Prior to the filing of this Complaint, Plaintiff was aware (or made aware) of the violations present at the Facility.

24.      A specific, although not exclusive, list of unlawful physical barriers, dangerous conditions and ADA violations Plaintiff experienced and/or observed or was made aware of, and preclude and/or limit Plaintiff's ability (because of her disability) to access the Facility and/or full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of the Facility, were revealed during an investigation of the Facility:

The main entrance is on 1st Avenue.  In the warm weather, the entrance door is opened and the storefront is completely folded back at the front corner and at the 116 Street side of the restaurant.   In cooler weather, there is a temporary enclosure around the main entrance.  The entrance is located within a 12 inch recess.  There is a step approximately 5-6 inches high within the entry recess.

There is another door located on 116th Street, however, tables arranged just inside the door obstruct wheelchair entry.  Moreover, even if a wheelchair patron was able to enter through that side door, there is no 36 inch wide aisle provided to allow passage to the front dining area.  Finally, a wheelchair patron would encounter rises created by the wood floor inside.

Outside dining is located in the front of the restaurant along 1st Avenue and continues

---

[1] For purposes of the Complaint, all numerical notations in paragraph 23 refer to violations of the 1991 Standards.

down 116th Street.  There is a barrier around the outside dining which fully obstructs access.  As a result, wheelchair patrons may not approach an area at an accessible level.  During nice weather, the exterior dining area is accessible to people in wheelchairs, in that they can approach a table and get service outside, if weather permits.  However, since there are no accessible tables without obstructions below the table, a person in a wheelchair is left to twist their body or sit sideways at the table.  The tables each have a single center leg and are supported by 3 other legs. The legs obstruct the necessary clearance to pull beneath the table in a wheelchair.

Once inside, there is ample aisle width to maneuver about in a wheelchair.  One will move straight ahead down an aisle where there is a bar inside to the left.  To the right, tables are available which would allow an accessible approach, but none of the tables allow for a person in a wheelchair to pull beneath them to sit at a table and eat, due to the table base.

**ACCESSIBLE ELEMENTS**

a.      The step at the front entrance has not been removed to allow Plaintiff's entry, although it would be readily achievable to do so.  Alternately, and under path of travel obligations, the step at the door violates 4.1.6(2) by failing to provide an accessible route to the maximum extent feasible, from the sidewalk to the entrance, although the cost of doing so is not disproportionate.  This violation made it impossible for Plaintiff to independently access the Facility in her wheelchair.

b.      No accessible route has been provided, in accordance with 4.3.1, which complies with 4.3.2, by connecting the sidewalk to an accessible entrance (4.3.2(c)).

c.      Alterations in some areas of the Facility amount to an alteration of the entire space, yet those areas have not been made accessible, as required by 4.1.6(c).

d.      Alterations on floor levels not accessible by ramp or elevator must still be built to

be accessible, in accordance with 4.1.6(2), yet alterations were made without providing an access route. This violation makes dangerous for Plaintiff to access the interior of the Facility.

      e.      Even if an alternate entrance were made accessible, the narrow aisle created by the table arrangement in the outside dining area is insufficient to allow a person in a wheelchair to pass through to reach the front of the Facility without disrupting already seated patrons (4.13.6, 4.3.3).

      f.      Surfaces within the entrance route into all areas of the Facility have rises over ½ inch which have not been removed and prevents Plaintiff's use of the facilities (4.5.2).

      g.      No ramp complying with 4.8 has been provided (4.1.6).

      h.      Stairways provided into some Facility areas do not have railings on both sides, as required by 4.9.1 and 4.9.4.

      k.      During inclement weather, a person in a wheelchair who, searching for an entry route, opens the door into the outside dining area, finds no buzzer, bell or signage directing them as to how to alert the staff that they are in need of assistance in entering the Facility interior (4.1.6(h)).

      l.      There is no way for Plaintiff to sit anywhere to eat and have access to the toilet rooms, as there is no accessible route connecting all accessible spaces within the site (4.3.2(2))

      m.      The Facility fails to comply with 5.1, due to the bar, inaccessible routes and inaccessible dining areas.

      n.      The Facility does not provide bar seating at a height of 34 inches or less, nor is accessible seating provided nearby (5.2, 4.32.4)

      o.      During alterations, there is no seating area provided in an accessible area with all the services and décor provided to the general public (5.4, 4.32).

p.      There is no table provided for diners in wheelchairs which allows them to slide up under the table, as other patrons may, due to the lack of knee clearance (4.23.3) and the presence of obstructions below the table which obstruct the wheelchair wheels.

Without an accessible route there is no way to access the bathroom facilities from the outside dining area.  There are two toilet rooms located inside, past the bar, on the left.  The larger of the two rooms is described here.  The door is over 32 inches wide so a disabled patron may enter in a wheelchair.  Inside, there are many barriers to use which could be easily corrected.  It is likely that the room is designed large enough if the toilet and sink were configured properly.  There is not enough clear floor space at the sink to allow an approach.  The rim of the sink is above the 34 inches high which a person in a wheelchair can handle and the mirror is hung too high to see from a wheelchair.  There is no protective wrap around the pipes under the sink, to protect from burns.  The toilet does not have enough clear floor space to allow use and the highly hung grab bars further inhibit a person in a wheelchair from independently using the toilet.

**TOILET ROOM**

q.      There is not enough clearance at the toilet, as required by 4.16.2.  The grab bars around the toilet are hung too high to be used by a person with limited dexterity and reach, such as Plaintiff, and violates 4.16.4.  The toilet has the flusher against the wall, in violation of 4.16.5.

r.      There is inadequate space at the sink to allow Plaintiff's approach and use due to the rim height and room configuration, in violation of 4.27.2, 4.19.2 and 4.24.5.  The pipes below the sink are not wrapped, in violation of 4.19.4 and the mirror above the sink is over 40 inches high at its lowest reflective edge, so Plaintiff may not see (4.19.6).

s.      There is no toilet facility provided which complies with 4.22, as required by 4.1.2

(6).  Alternately, there is no unisex toilet provided which complies with 4.16 nor one lavatory complying with 4.19. (only renovated areas containing a primary function are required to comply with 4.1.2 (6). However, per 4.1.2 (6) even if not on an accessible route, it is required to meet 4.22 guidelines.

       t.      The required turning space is not present inside any toilet room which would allow Plaintiff to enter and close the door (4.2.3, 4.22.3).

       25.     The above listing is not to be considered all-inclusive of the barriers, conditions or violations which exist at the Property and Facility. Plaintiff requires an inspection of the Facility and Property in order to determine any other discriminatory acts which violate the ADA.

       26.     The removal of the physical barriers and dangerous conditions present at the Facility and Property is readily achievable because the nature and cost of the modifications are relatively low and the Defendants have the financial resources to make the necessary modifications.

       27.     Plaintiff has attempted to gain access to the Facility in her capacity as a customer, but because of her disability has been denied access to, and has been denied the benefits of services, programs and activities of the Facility and Property, and has otherwise been discriminated against and damaged by Defendants, because of the physical barriers, dangerous conditions and ADA violations set forth above, and expect to be discriminated against in the near future by Defendants because of Plaintiff's disabilities, unless and until Defendants are compelled to remove the unlawful barriers and conditions and comply with the ADA.

       28.     The removal of the physical barriers, dangerous conditions and ADA violations set forth herein is readily achievable and can be accomplished and carried out without much difficulty or expense.  42 U.S.C. §12182(b)(2)(A)(iv); 42 U.S.C. §12181(9); 28 C.F.R. §36.304.

29.     Plaintiff is without adequate remedy at law, is suffering irreparable harm, and reasonably anticipates that she will continue to suffer irreparable harm unless and until Defendants are required to remove the physical barriers, dangerous conditions and ADA violations that exist at the Facility and Property, including those set forth herein. The relief requested serves the public interest and the benefit to Plaintiff and the public far outweighs any detriment to Defendants.

30.     Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action, and pursuant to 42 U.S.C. §12205 and 28 C.F.R. §36.505, Plaintiff is entitled to attorney's fees, costs, and expenses from Defendants.

31.     Pursuant to 42 U.S.C. §12188(a), this Court is provided authority to grant injunctive relief to Plaintiff, including an order to alter the subject Facility and Property to make it readily accessible to and useable by individuals with disabilities to the extent required by the ADA.

## SECOND CAUSE OF ACTION- VIOLATIONS OF NYCHRL

32.     Plaintiff repeats and realleges all the foregoing allegations of the Complaint as if fully set forth herein.

33.     The NYCHRL provides:

> It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation because of the actual or perceived ... disability ... of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof ... to the effect that any of the accommodations, advantages, facilities and privileges of any such place or provider shall be ref used, withheld from or denied to any person on account of... disability.

> NYC Admin. Code§ 8-107(4)(a).

34.     Defendants are in violation of the NYCHRL by denying the Plaintiff full and safe

access to all of the benefits, accommodations and services of the Facility.

## THIRD CAUSE OF ACTION- VIOLATIONS OF THE NYSHRL

35.    Plaintiff repeats and realleges all the foregoing allegations of the Complaint as if

fully set forth herein.

36.    The NYSHRL provides:

> It shall be an unlawful discriminatory practice for any person, being the owner,
> lessee, proprietor, manager, superintendent, agent or employee of any place of
> public accommodation..., because of the disability ... of any person, directly or
> indirectly, to refuse, withhold from or deny to such person any of the
> accommodations, advantages, facilities or privileges thereof ... to the effect  that
> any  of  the  accommodations, ad vantages, facilities and privileges of any such
> place shall be refused, withheld from or denied to any person on account of...
> disability.

> NYS Exec. Law§ 296 (2)(a).

37.    The Facility is a place of public accommodation as defined in the NYSHRL.

38.    Defendants are in violation of the NYSHRL by denying the Plaintiff full and safe

access to all of the benefits, accommodations and services of the Facility.

39. The Defendants have further violated the NYSHRL by being in violation of the rights

provided under the ADA.

## DAMAGES, ATTORNEY FEES AND COSTS

40.    In order to enforce Plaintiff's rights against the Defendants, Plaintiff has retained

counsel and is entitled to recover attorney's fees, expenses and costs pursuant to the ADA and the

Administrative Code. 42 U.S.C. §12205; 28 C.F.R. §36.505; and Administrative Code § 8-502.

41.    Plaintiff prays for judgment pursuant to N.Y. Exec. Law§ 297, including

compensatory damages contemplated by § 297(9).

WHEREFORE, Plaintiff respectfully requests that the Court enter a judgment against the

Defendants, in favor of Plaintiff, containing the following relief:

A.      Enter declaratory judgment declaring that the Defendants have violated the ADA and implementing regulations, the NYCHRL and the NYSHRL and declaring the rights of Plaintiff as to the Defendants' place of public accommodation, and its policies, practices and procedures

B.      Issue a permanent injunction ordering the Defendants to remove all violations of the ADA, the NYCHRL and the NYSHRL, including, but not limited to, the violations set forth above;

C.      Retain jurisdiction over the Defendants until the Court is satisfied that the Defendants' unlawful practices, acts and omissions no longer exist and will not reoccur;

D.      Award at least $2,000.00 (TWO THOUSAND DOLLARS) to Plaintiff as compensatory damages as a result of the Defendants' violations of the NYCHRL and the NYSHRL;

E.      Award reasonable attorneys' fees, costs and expenses pursuant to the Administrative Code;

F.      Find that Plaintiff is a prevailing party in this litigation and award reasonable attorney fees, costs and expenses pursuant to the ADA; and

G.      For such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

Dated: September 26, 2018

*Donald J. Weiss*
Donald J. Weiss, Esq. (7619)
Attorney for Plaintiff
363 Seventh Avenue, 4th Floor
New York, New York 10001
(212) 967-4440